### E.W. SMITH PUBLISHING COMPANY, INC., Everett Smith, Plaintiffs,

v.

### TOWN OF NEW WINDSOR, George Meyers, Defendants.

### No. 05 CIV. 50.

United States District Court, S.D. New York.

June 24, 2005.

Stephen Bergstein, Thornton, Bergstein & Ullrich, LLP, Chester, NY, for Plaintiffs.

Richard Britt Golden, Burke, Miele & Golden, LLP, Suffern, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

The Plaintiffs, a publishing company and its owner, filed for a preliminary injunction against the Town of New Windsor and its town supervisor on the grounds that the supervisor's instructions to Town employees on speaking with the press violated the First Amendment. After hearing argument on the matter, the Defendants produced a written provision regarding its press policy for Town employees obviating the need for the issuance of an injunction.

### I. Background

E.W. Smith Publishing Company, Inc. and Everett Smith (collectively referred to as the "Plaintiffs") filed a complaint against the Town of New Windsor (the "Town") and George Meyers (the "Supervisor") (collectively referred to as the "Defendants") on January 5, 2005 to challenge the violation of their First Amendment rights. Everett Smith owns the E.W. Smith Publishing Company which publishes the Sentinel. The Sentinel is a twice-weekly newspaper serving the New Windsor community. It provides information on local politics, community affairs, and other matters of public interest. The Sentinel became the Town's official news-

paper in 1979. George Meyers is the Town Supervisor. The Supervisor allegedly stated on more than one occasion that no town employee could speak with the Sentinel. In response, Plaintiffs filed the complaint and applied for a preliminary injunction. Following a hearing before this Court, this order renders a decision on the application for an injunction.

Plaintiffs allege that the Defendants are placing a prior restraint on speech in violation of the First Amendment. The Supervisor allegedly stated that any town employee who spoke with Everett Smith would be "dead." The Supervisor describes the policy as: "I want to be the Town representative for media contacts for the purpose of conveying the official position of the Town. When the policy was first started in 1994, my intent was to be the municipal Information Officer." The Supervisor has in the past also permitted employees to communicate with the media on behalf of the Town. Plaintiffs argue that the policy is an impermissibly vague, unwritten regulation which leaves Town employees wondering what constitutes a statement "conveying the official position of the Town." Plaintiffs contend that the policy is overbroad because it only restricts media contacts but not other forms of public speech about Town policy which could confuse people. Plaintiffs also argue that the Supervisor grants exceptions without the guidance of clear and objective rules.

After holding oral argument on this matter, the Defendants created a written policy on media contact which was shared with the Plaintiffs. The policy, as presented to the Court and Plaintiffs, is as follows:

### Town of New Windsor Media Contact Policy

#### Preamble

The Town of New Windsor, acting by and through its Supervisor, has a unique and constitutionally vital stake in ensuring that official Town policies and official statement are communicated to the public in a complete, factual, and accurate manner. Consequently, and in order to carry out this constitutionally vital role, Town employees' contacts with media shall be in accordance with this Media Contact Policy.

#### Policy

Following is a reaffirmation of the Town's Media Contact Policy that has been in place since 1994.

All Town employee contact with the media for purposes of communicating official Town policies or statements shall be directed to the Town of New Windsor Supervisor. The Supervisor shall then determine if he will address the communication personally or will direct that another Town employee address the communication with the media.

The Supervisor may from time to time so designate a Town employee to be such media contact for a particularized area of Town business on an ongoing basis. The Town Chief of Police has been, and hereby continues to be, designated to be the media contact person for Town Police business.

Dated: February 15, 2005

Signed: George J. Meyers, Supervisor

Following receipt of the written policy, the Court held a hearing on the matter. At the hearing, Plaintiffs were not satisfied by the written policy because it had not been enacted by the Town Board and because it still was deficient. The Defendants represent to the Court that the policy is or will be an official Town policy. The Court is satisfied that the written policy is or will become the official Town policy. On the second objection, Plaintiffs state that the written policy is narrower than the overbroad, unwritten policy that

had been previously in effect since 1994. Yet Plaintiffs still find the written policy overly broad as it regulates the procedure for "communicating official Town policies or statements," preventing an employee from criticizing Town policy to the media because it would necessarily entail having to communicate official Town policy. Plaintiffs argue that the written policy should explicitly state that Town employees are free to speak to the media, apart from making official Town statements.

## II. Standing

To have standing, a party must allege (1) a personal injury in fact, (2) a violation of his or her own, not a third-party's, rights, (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved, (4) that the injury is traceable to the challenged act, and (5) that the courts can grant redress for the injury. *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 472–74, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). A media organization has the First Amendment right to gather news and receive speech. It is also recognized that under certain circumstances media outlets have standing to challenge a policy that restrains the speech of others, if that policy interferes with the media's own right to gather news and receive speech. *See, e.g., United States v. Simon,* 664 F.Supp. 780, 786 (S.D.N.Y. 1987). Typically, a plaintiff must establish that there are willing speakers that are being restrained. However, restraint on potential speech is sufficient. *See id.* ("[B]ecause the Order might ultimately restrain some speech, despite defendants' current positions, applicants possess standing as potential recipients to challenge the restraints insofar as they may be unconstitutional with respect to the speakers."). Therefore, Plaintiffs have standing to bring this action.

## III. Preliminary Injunction

In order to have sufficient grounds to request a preliminary injunction, Plaintiffs must satisfy the long established two-pronged test: 1) demonstrated irreparable harm, and 2) a likelihood of success on the merits. *See, e.g., Latino Officers Assoc. v. Safir,* 170 F.3d 167, 171 (2d Cir.1999). The second prong of the test—likelihood of success on the merits—has not been met. The Plaintiffs attempt to enjoin an unwritten policy that has been either superceded (Plaintiff's claim) or committed to writing (Defendant's claim). Seeing as there is now a written policy now on the topic of Town employees contact with the media, the Plaintiff's previous arguments that the policy was vague and seemed to change at the Supervisor's will are now moot. Having reviewed the new written policy, the Court finds that the Plaintiffs have not shown a likelihood of success on the merits for a violation of the First Amendment.

## IV. Conclusion

Based on the foregoing, the Plaintiff's application for a preliminary injunction is hereby denied.

IT IS SO ORDERED.